IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLOBAL POLYCHEM, L.L.C. | § | |
| | § | |
| *vs*. | § | C.A. NO. H – 10 – 1289 |
| | § | |
| TRITON  OVERSEAS | § | |
| TRANSPORT,  INC. | § | |

## *NOTICE  OF  REMOVAL*

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Triton Overseas Transport, Inc. ("Triton") respectfully files and serves this Notice of Removal:

1.      On information and belief, Plaintiff Global Polychem, L.L.C. is a Delaware limited liability company with its registered and principal place of business in Houston.

2.      Triton is a Texas corporation with its principal place of business in Houston, engaged in business as a Non–Vessel Operating Common Carrier ("NVOCC").

3.      On March 3, 2010, Plaintiff filed its Original Petition in Cause No. 2010–13985 in the 152nd Judicial District Court of Harris County, Texas, styled as *Global Polychem, L.L.C. v. Triton Overseas Transport, Inc.*

4.      Plaintiff's petition seeks to recover from Triton actual damages,

prejudgment interest, post–judgment interest and suit costs all exceeding $50,000 and allegedly arising from the misdelivery of a containerized cargo.  The petition references the cargo with Triton's Booking No. 529052709.

5.      A true and correct copy of the Booking Confirmation issued by Triton for Booking No. 529052709 is attached and marked as Exhibit 1.  A true and correct copy of Bill of Lading No. 20094721TD issued by Triton for that booking is attached and marked as Exhibit 2.  The bill of lading identifies the cargo as a single container of mixed polypropylene/polyethylene ("PP/PE") pellets carried from Houston to Nhava Sheva, India aboard the M/V MAERSK IDAHO, and is dated September 24, 2009 at Houston.

6.      Plaintiff served Triton with the Original Petition on April 5, 2010.

7.      The Carriage of Goods by Sea Act, 46 U.S.C. § 30701, *et seq.*, ("COGSA") and the Harter Act, 46 U.S.C.App. §§ 190–96 constitute Plaintiff's exclusive remedy in this action arising from alleged carrier misdelivery of goods carried in foreign trade by sea to or from ports in the United States.  *Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag–Lloyd Aktiengesellschaft,* 855 F.2d 215, 216–7 (5th Cir. 1988) (finding removal proper under 28 U.S.C. § 1337 because the Harter Act was implicated in the state court suit).  *See also*, *Joe Boxer Corp. v. Fritz Transp. Intern.* 33 F.Supp.2d 851, 855 (C.D.Cal. 1998) (finding COGSA to be completely preemptive but holding that the law did not govern the facts of the case); *Polo Ralph Lauren, L.P., v. Tropical Shipping & Constr. Co.*, 215 F.3d

2

1217, 1220 (11th Cir. 2000) (noting that COGSA is "silent on its preemptive scope" but holding that COGSA provides an exclusive remedy).

8.      The United States District Court has original jurisdiction of this civil action pursuant to 28 U.S.C. §1331 because it arises under the Constitution, laws or treaties of the United States.  The United States District Court also has original jurisdiction of this civil action pursuant to 28 U.S.C. §1337(a) because it arises under "a[n] Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . "  Accordingly, Triton removes this action under 28 U.S.C. §§ 1441 and 1446.

9.      Under Local Rule 3, Triton electronically files herewith the information to be provided in a civil action cover sheet (Form JS44c).

10.     Triton attaches, files and serves herewith:

(a)     An index of matters being filed under Local Rule 81(5).  (Exh. A)

(b)     All executed process in the case under Local Rule 81(1).  (Exh. B)

(c)     Pleadings asserting causes of action (*i.e.*, BCIC's Original Petition) under Local Rule 81(2).  (Exh. C)

(d)     The docket sheet under Local Rule 81(4).  (Exh. D)

11.     Per Local Rule 81(2) and (3), the state court action contains no answers to pleadings, or orders signed by the state judge.

3

12.    Under Local Rule 81(6), the following is a list of all counsel of record, including addresses, telephone number and parties represented:

Counsel for Plaintiff Global Polychem, L.L.C.

Sanjeev Jaiswal, *pro se*
10303 Northwest Freeway, Suite No. 514
Houston, Texas 77092
Telephone:   (832) 788–3952
Facsimile:    (713) 686–2007

Respectfully submitted,

*SHARPE & OLIVER, L.L.P.*

By_____
Robert C. Oliver
State Bar No. 15255700
S. D. Texas No. 886
550 Westcott, Suite 230
Houston, Texas 77007–5096
Telephone:       (713) 864–2221
Facsimile:       (713) 864–2228

OF COUNSEL:

R. M. Sharpe, Jr.
State Bar No. 18129000
S. D. Texas No. 889

ATTORNEYS   FOR   DEFENDANT

4

## *Certificate  of  Service*

I served this Notice of Removal upon Plaintiff by its counsel of record by U.S. First Class Mail, return receipt requested, facsimile transmission and/or electronic transmission on April 21, 2010.

_____

Robert C. Oliver

# Exhibit 1

# TRITON OVERSEAS TRANSPORT, INC

**BOOKING CONFIRMATION**

**3340 GREENS ROAD, STE 410A HOUSTON, TEXAS 77032**
**TEL: 281-227-0318     FAX: 281-227-0328**

| Our Reference Number | Carrier Booking Number |
|---|---|
| 20094721 | 529052709 |

| Shipper | Carrier | LCL Voyage No. | Shippers Reference |
|---|---|---|---|
| GLOBAL POLYCHEM LLC.<br>10303 NORTHWEST FREEWAY #514<br>HOUSTON, TX 77092<br><br>Tel: 832-788-3952<br>Fax: 713-785-2935<br>Contact: SANJEEV JAISWAL | SAFMARINE | | |

| | Depot | | Loading Pier / Terminal |
|---|---|---|---|
| | | | APM TERMINAL HOUSTON<br>919 E. BARBOURS CUT BLVD<br>LA PORTE, TX 77571<br>FIRMS CODE:  S787 |

| Forwarding Agent - F.M.C. No. | Cargo Supplier | Service Provider for Precarriage |
|---|---|---|
| Tel:<br><br>Fax:<br><br>Contact: | | |

| Place of Receipt | Port of Loading | Vessel | Voy. No. |
|---|---|---|---|
| | HOUSTON | MAERSK IDAHO | 0909 |

| Port of Discharge | Place of Delivery by On-Carrier | Cut Off Date | Doc Cut-off | ETS | ETA | ETD |
|---|---|---|---|---|---|---|
| NHAVA SHEVA | AHMEDABAD | 09/22/09 | 00/00/00<br>12:00AM | 09/24/09 | 11/11/09 | 11/11/09 |

Number / Type Containers:    **1 x 40 FT HIGH CUBE**

| Commodity: | Pieces / Package | Lbs: | Kgs: | Cft: | Cbm: |
|---|---|---|---|---|---|
| **RESIN** | | | | | |

Remarks

**THANK YOU FOR THE BOOKING**

Special Instructions

**UNLESS OTHERWISE NOTED,  ALL PAPER WORK IS DUE BY NOON ON THE DOC C/O DATE. US CUSTOMS HAS BEGUN ENFORCING A "NO DOCS, NO LOAD" POLICY FOR ALL EXPORTS FROM THE USA.  AS A RESULT OF THIS POLICY, ANY PRESENTATION OF LATE DOCUMENTATION COULD RESULT IN YOUR CARGO NOT BEING LOADED AND/OR PENALTIES AND FINES.**
**FORWARDERS FEES WILL NOT BE PAID UNTIL 2 WEEKS AFTER CARGOS ARRIVAL AT DESTINATION AND CHARGES HAVE BEEN COLLECTED.**
**\*\*ALL TITLED VEHICLES - TRITON OVERSEAS MUST HAVE COPY OF LEGIBLE, CUSTOMS PERFORATED TITLE, 1 DAY PRIOR TO VESSEL CUT OFF\*\***
**C/O'S ARE ESTIMATE ONLY, TRUCKER IS RESPONSIBLE FOR CONFIRMING THIS INFOR PRIOR TO DELIVERY.**

**PLEASE SEND YOUR SHIPPING INSTRUCTIONS TO** *EXPORTDOCS@TRITONOVS.COM* **WITH THE BOOKING NUMBER IN THE SUBJECT.  AFTER YOU HAVE RECEIVED A PROOF OR FINAL B/L, REVISION REQUESTS SHOULD BE SENT TO THE DOCUMENTATION REPRESENTATIVE HANDLING YOUR SHIPMENT.  FOR GENERAL DOCUMENTATION INQUIRIES, PLEASE CALL 281-227-0318.**
**FAILURE TO SEND INSTRUCTIONS TO THE ABOVE ADDRESS MAY CAUSE DELAYS IN YOUR B/L RELEASE.**

| Freight & Charges | Base Rate | Prepayable | Collect | |
|---|---|---|---|---|
| OCEAN FRT | 1 40HC @ 1,650.00 | 1,650.00 | | USD |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | TOTAL | $1,650.00 | | |

COLLECT FREIGHT TO CHILE MUST BE PRE-APPROVED PRIOR TO
B/L RELEASE NO COLLECT FREIGHT TO WEST AFRICA/VENEZUELA
ALL SHIPMENTS SUBJECT TO LOAD PORT WHARFAGE,
DESTINATION AND RECEIVING CHARGES

AES FILING FEE FOR SED $50.00
COLLECT SHIPMENT S/C - $50.00
FORWARDERS ADVANCE S/C - 2.5%

**Booking Taken  09/14/09**

If you should have any questions, please call
ABEL EDGINGTON
281-902-3812

Exhibit 2

# TRITON OVERSEAS TRANSPORT, INC

## BILL OF LADING

| SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | BOOKING NO. | BILL OF LADING NO. |
|---|---|---|
| GLOBAL POLYCHEM LLC.<br>10303 NORTHWEST FREEWAY #514<br>HOUSTON, TX 77092 | 529052709 | 20094721TD |
| | EXPORT REFERENCES<br>INVOICE 135 | |

| CONSIGNEE (COMPLETE NAME AND ADDRESS) | FORWARDING AGENT/ FMC NO. |
|---|---|
| RAJ & COMPANY<br>15016 GALAXY COMM, CENTER, 1ST<br>FLOOR<br>JAWAHAR RD., RAJKOT, GUJRAT: 360001 | |

| NOTIFY PARTY (COMPLETE NAME AND ADDRESS) | FORWARDER'S REFERENCE |
|---|---|
| RAJ & COMPANY<br>15016 GALAXY COMM, CENTER, 1ST<br>FLOOR<br>JAWAHAR RD., RAJKOT, GUJRAT: 360001 | POINT AND COUNTRY OF ORIGIN<br>TEXAS , US |
| | TO OBTAIN DELIVERY, CONTACT<br>GLOBELINK W.W INDIA PVT LTD<br>B-703 ATMA HOUSE<br>7TH FLOOR, A WING, OPP. OLD RBI<br>ASHRAM ROAD, AHMEDABAD 380009 INDIA<br>TEL: 91-7966311301/2/3<br>FAX: 91-7966311304 |

PLACE OF INITIAL RECEIPT

| VESSEL VOY FLAG | PORT OF LOADING | |
|---|---|---|
| MAERSK IDAHO 0909 | HOUSTON | **ORIGINAL** |
| PORT OF DISCHARGE<br>NHAVA SHEVA | FOR TRANS-SHIPMENT TO<br>ICD AHMEDABAD | ROUTING INSTRUCTIONS |

| MKS. & NOS./CONT. NOS. | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS in Schedule B detail | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| PONU7129510<br>1352713 | 1x40HC | CONTAINER SLAC:<br>1 LOOSE<br>PP/PE MIX WITH YELLOW/BLACK<br>PELLETS- PLANT SWEEP<br><br>10 DAYS FREE AT DESTINATION<br>AES ITN: X20090918014741 | 21029.00K<br>46360.53L | |

FREIGHT PREPAID
THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES
IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO
U.S. LAW PROHIBITED.

| FREIGHT RATES, CHARGES, WEIGHTS AND/OR MEASUREMENTS | | |
|---|---|---|
| SUBJECT TO CORRECTION | PREPAID | COLLECT |

Received by Carrier for shipment by ocean vessel between port of loading and port of discharge, and for arrangement or procurement of pre-carriage from place of receipt and on-carriage to place of delivery, where stated above, the goods as specified above in apparent good order and condition unless otherwise stated. The goods to be delivered at the above mentioned port of discharge or place of delivery, whichever applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or Consignee agree to accepting this Bill of Lading.

IN WITNESS WHEREOF three (3) original Bills of Lading have been signed, not otherwise stated above, one of which being accomplished the others shall be void.

DATED AT **HOUSTON, TEXAS** NO. OF ORIGINALS 3

By TIFFANY DELAINE Page 1 of 1

| TOTAL PREPAID | | TRITON OVERSEAS TRANSPORT INC AS THE CARRIER - OTI # 13078N |
|---|---|---|
| TOTAL COLLECT | | 20094721TD September 24 2009 |
| | | B/L NO. MO DAY YEAR |

1. In accepting this bill of lading, the Shipper, Consignee, Holder hereof and Owner of the shipment agree to be bound by all of its terms, conditions and limitations, whether printed, stamped or written on the front or back hereof, as well as the provisions of Carrier's lawfully filed Freight Tariffs, Rates and Rules, as fully as if they were all specifically accepted in writing by such Shipper, Consignee, Holder or Owner, and local customs or practice to the contrary notwithstanding. The terms of this bill of lading constitute the contract of carriage, which is between the Shipper and the Carrier. The Owner of the goods and the owner and/or demise of Charterer if any carrying vessel. The name of the Owner and/or Demise Charterer of the vessel named on the reverse side may be obtained from the above agents or from the Lloyd's register. The Carrier shall have the right to ship goods in containers and to stow containers on deck or under deck.

2. In the bill of lading the word "Carrier" includes the ship owner, and any of its employees, agents or contractors (See Clause 6). In the event that cargo subject to the bill of lading is transport aboard a vessel which is chartered, not owned, by the operator, the word "Carrier" shall include the operator-charterer of the ship and any of its employees, agents or contractors. The words "underlying carrier" shall include any water, rail, motor, air, or other carrier utilized by the "Carrier", for any part of the transportation of the shipment. The word "water carrier" shall include any ship, barge, lighter, fer owner, master, operator or charterer. The word "vessel" shall include any substituted vessel, feedership, or other water craft. The word "Merchant" includes the Shipper, Consignee, the Holder of the bill of lading and the Owner of the goods. The words "On Board" means on board any mode of transportation used by the carrier.

3. Notice of loss. Unless notice of loss or damage to the goods and general nature of it be given in writing to the Carrier at the place of delivery before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under this B/L, or if the loss or damage be not apparent, within three consecutive days thereafter, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in the B/L.

4. Time Bar. All liability whatsoever of the Carrier shall cease unless suit is brought within 12 months after delivery of the goods or the date when the goods should have been delivered.

5. Laws and Jurisdiction. This contract shall be construed and governed by the United States Law and any suit filed against Carrier for any cause arising out of this contract shall be filed in the United Stated Federal Courts, Southern District of New York, which Court shall by this agreement have exclusive jurisdiction of such suits.

6. Sub-contracting, Defense of Servants (See Clause 10) (1) The carrier shall be entitled to substitute any vessel or other means of transport and to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the goods. (2) If any action for loss or damage to the goods is brought against any insurer, servant, agent, independent contractor or subcontractor, including stevedores, carpenters and watchmen, such person shall be entitled to avail himself of the defenses and limits of liability which the Carrier is entitled to invoke under this contract. For the purpose of this clause, all such persons, are parties to this contract, made on their behalf by the Carrier. The aggregate of the amounts recoverable from the Carrier and his servants, agents or independent contractors shall in no case exceed the limits provided for in this document.

7. Carrier's Liability
(a) With respect to overland transportation on the U.S.A. (See Clause 15, Combined Transport), the terms and conditions of the Uniform I.C.C. bill of lading, when applicable, shall also apply together with the underlying carrier's tariff, which shall be deemed to be incorporated herein as if set forth at length. The liability of the ship owner as Carrier for losses occurring during land transport shall under no circumstances be greater than that of such underlying carrier.
(b) With respect to water transportation, the terms and conditions of the bills of lading of the underlying water carriers under their bills of lading. Such water transportation shall be subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, or to any similar Hague Rules law compulsorily applicable to this bill of lading, which Act of law shall be deemed to be incorporated herein. The provisions of said Act or law (except as otherwise specifically provided herein) shall also govern before the shipment is loaded on and after it is discharged from the vessel while the shipment is in the custody and possession of the Carrier. It is agreed that such Act or law shall also apply to containers on deck and that the Carrier has the right to ship goods in containers on deck or under deck. The Carrier and insurers shall by this contract be entitled to all limitations and exemptions from liability authorized by the provisions of Section 4281 and 4282 inclusive of the Revised Statutes of the United States, the same as if it were the owner of the vessel or other water craft used to transport the goods.
(c) With respect to overland transportation, if any, between points outside of the U.S.A., the terms and conditions of the contracts of carriage of the underlying water, road, rail or air carriers participating in such transportation shall apply and are deemed to be incorporated herein as if set forth at length. If this is a Combined Transport bill of lading (See Clause 15) the liability of the Carrier, shall under no circumstances be greater than that of the underlying carriers under their contracts of carriage and the Carrier, shall be entitled to all of the rights, defenses limitations and exemptions of liability contained therein. The provisions of the Convention of the Contract for the International Carriage of Goods By Road, dated May, 1956 (C.M.R.) and of the International Agreement on Railway Transports. dated February 25, 1961 (C.I.M.) whether or not the countries concerned in the transportation are parties thereto, are deemed to be incorporated herein and to override any conflicting provisions of the said contracts, tariffs, and local laws, with the exceptions of the provisions in C.M.R. and C.I.M. or Warsaw Convention, regarding limitations of liability per package or unit kilo (See Clause 10) Nothing herein shall be deemed a waiver of any rights which the Carrier may have against underlying carriers for indemnity or otherwise. Sample copies of bills of lading, or other transportation documents of the underlying carriers referred to in this clause and 7 (a) and 7 (b), above may be obtained from the Carrier or the officers of any of its agents. If the goods are to be trans-shipped as indicated in the Trans-shipment Box (14) on the reverse side, then the Carrier's responsibility as the carrier shall terminate when the goods are delivered to the on-carrier at the Port of Discharge and in making arrangements for trans-shipment or forwarding, the Carrier shall act only as AGENT of the Shipper, Consignee, Owner, or Holder thereof.

8. Routes, Liberties. The goods may be carried by any route whatever, whether or not the most direct or advertised or customary route, and by any substituted vessel or mode of transportation. Arrival dates are not guaranteed unless stated on the face hereof. In any situation whatsoever which in the judgement of the Carrier or underlying carriers is likely to give rise to risk of seizure, fire, detention or delay or disadvantage to the goods, to the container or to the Carrier, the Carrier may, before or during transportation, require the Shipper, Consignee, Owner of the goods or Holder hereof, to take delivery thereof at the place of shipment or any place or port, or the goods may, without notice, be discharged, forwarded, trans-shipped, stored, surrendered or returned, without responsibility of the Carrier, all at the expense and risk of the goods and all charges additional freight or other expenses shall be paid by the Shipper, Owner, Consignee or Holder hereof and shall be a lien on the goods.

9. Damages. The Carrier's liability for unreasonable delay shall be limited to the freight for the transport covered by this bill of lading. The measure of damage for other losses shall be market value at destination on the goods were delivered or should have been delivered. The Carrier shall not be liable for consequential losses and shall have the option of replacing the lost goods or repairing damaged goods.

10. Package Limitation. Where container (s) is stuffed by shipper or on his behalf, Carrier's liability will be limited to $500.00 with respect to the contents of each container, except when the shipper declares Ad Valorem valuation on the face hereof and pays additional freight on such declared valuation. The freight rate charged when no higher valuation is declared by the Shipper is based on a valuation of $500 per container. Where the goods in such a container belong to more than one owner, the $500 will be apportioned according to each owners interest in the contents. Where goods are received by the Carrier break bulk, the Carrier's liability shall be limited to $500 per carton, bundle skid pallet or other unit, except when the Shipper declares Ad Valorem value herein and pays additional freight as above.

11. Carrier's Liens. The Carrier shall have a lien on the shipment for unpaid freight, as well as inland and for any expenses incurred by it or by underlying carriers for recoopering, repairing, repackaging, fumigation, inspecting or reconditioning the shipment; also for demurrage, fines dues, tolls, surveys, lighterage, and any and all customs, duties and port charges; also for legal fees and other expenses incurred in connection with attachment, seizure, detention, condemnation or other legal proceedings brought against the shipment by authorities or by third parties. The Shipper, Consignee, Owner and Holder hereof agree to be jointly and severally liable for freight and for payment of all said expenses. The carrier's lien shall survive delivery and may be enforced at public or private sale upon ten days notice to Consignee or Notify Party.

12. Shipper's Responsibility. The shipper shall be deemed to have guaranteed to the Carrier the accuracy, at the time the goods were taken in charge by the Carrier, of the description of the goods, marks, number, quantity and weight and any statement as to the contents of containers or other packages as furnished by him, and the Shipper shall indemnify the Carrier against all loss, damage and expenses arising or resulting from inaccuracies in or inadequacy of such particulars. The right of the Carrier to such indemnity shall in no way limit his responsibility under this B/L to any person other than the Shipper.

13. Containers Stuffed by Shipper. When container(s) are stuffed by Shipper or his agent, this bill of lading shall be a receipt for only the container (s), and Carrier shall not be responsible for the count of the contents, nor for concealed damages or for improper loading or mixing of articles in the container, and the Consignee or Holder here of agrees that upon delivery, the Carrier will be given a receipt for the containers before the shipment is released. Carrier shall not be liable for any loss, damage or injury caused by improper stuffing of containers when such has been performed by the Shipper of on the Shipper's behalf or on the Shipper's behalf. Shipper shall be liable for and shall hold the Carrier harmless from any and all damage or injury caused by cargo which by its nature is dangerous, fragile, perishable or is improperly stuffed or secured in container. All containers stuffed by Shipper shall be sealed by Shipper and the seal number shown hereon.

14. General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1974, except Rule XXII thereof, at such port or place as may be selected by the Carrier, and as to matters not provided for these Rules according to the laws, and usage at the port of New York. Average agreement and bond and such additional security as may be required by

the Carrier, must be furnished before delivery of the goods. The Adjustment shall be made by an Adjuster selected by the Carrier from the Association of Average Adjusters of U.S.A. and his Adjustment shall be prima facie evidence as against all interest in the event of accident, danger or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible by statute, contract or otherwise, the goods, the Shipper and the Consignee shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect to the goods. If a salvaging ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such a salvaging ship belong to strangers. Contribution to general average by all interests shall be paid to the owners even when such an average is the result of fault, neglect or error of the Master, pilot or crew. The Shippers and Consignees expressly renounce any and all codes, statutes, laws or regulations, which might otherwise apply.
In the event general average is declared by any other participating carrier, or by the owner or charterer of any feedership or other watercraft used to accomplish the overall carriage, the goods, the Shipper and the Consignee shall contribute directly to such general average in accordance with the contract of the participating carrier or of the feedership or watercraft owner or Charterer.

15. Responsibility. (a) Port-to-Port shipments. Carrier shall be liable for the goods as Carrier from the time the goods are received by the Carrier at the port of loading (Box 12) until they are delivered to the port authorities or the Consignee or the on-carrier at the Port of Discharge (Box 13). If the loading or unloading of the cargo is undertaken by a stevedore or designated by the Shipper or Consignee, or, if under the local law or custom of the port the loading or unloading of cargo must be undertaken by a public or semi-public group or government society the liability of the Carrier begins when the cargo is surrender by that group, society or stevedore company to the Carrier at the port of loading and the terminates upon discharge of the cargo from the vessel onto the dock by that group, society or stevedore at the port of discharge, (b) Through Combined Transport. Whenever the goods are to be Pre-Carried from an inland point (Box 10A) and/or delivered to an inland destination (Box 15), and freight is paid for the through Combined transport, the Carrier undertakes to procure the entire transport from the place where the goods are taken into charge to the place designated for delivery and to be directly responsible to the Merchant for such through carriage. All claims must be filed with this Carrier, who will be solely responsible to process them to conclusion. When payment is made to the Merchant, this Carrier, shall be automatically subrogated to to all rights of the Merchant against all others, including underlying carriers, on account of such loss or damage. When loss or damage occurs during the through combined transport but it cannot be determined which carrier had custody or control of the goods at the time of the loss or damage, the Merchant and Carrier agree that it shall be deemed that the loss or damage occurred aboard the vessel and clause 7(b) shall apply.

16. The terms of this bill of lading shall be separable, and if any provision hereof, or any part of any provision, be held to be invalid or unenforceable, such holding shall not affect the validity or enforceability of any other provision or part thereof in the bill of lading.

17. Currency. Rates quoted herein are in U.S. currency or its equivalent, Except as otherwise provided in the Carrier's tariffs, collect freight on shipments rated in U.S. dollars shall be converted at the current rate of exchange at New York, based on unblock currency of country of discharge. on the date the vessel enters Customs at the Port of Discharge. Freight shall be deemed earned upon receipt of the goods and shall be paid in any event.

18. Coopering and Repairs. The Shipper, Consignee or cargo owner shall be liable for and shall indemnify the Carrier and vessel, and the Carrier shall have a lien on the goods or all expenses of coopering, repairing fumigating, repacking or reconditioning of the goods, also all expenses for repairing containers damaged by contents or while in the possession of the Shipper or Consignee and demurrage on containers, also for Shipper's or Consignee's failure to supply information otherwise comply with laws and regulations in connection with the goods. The Carrier's lien shall survive delivery and may be enforced by private or public sales, and without notice.

19. Deck Cargo (except goods carried in containers on deck) and live animals are received and carried solely at Shipper's and Consignee's risk (including accident or mortality of animals) and the Carrier shall not in any event be liable for any loss or damage thereto arising or resulting from any matters mentioned in Section 4, Subsection 2(a) to (p) inclusive of the United States Carriage of Goods by Sea Act, or from any other cause whatsoever not due to the fault of the carrier, and warranty or seaworthiness in the premises being hereby waived, and the burden of proving liability being in all respects upon the Shipper, Owner, or Consignee. except as provided above, such shipments shall be deemed goods, and shall be subject to all terms and provisions in this bill of lading relating to goods.

20. Freight. Since freight is calculated on a basis of particulars furnished by the Shipper, the Carrier may at any time inspect the contents of the container(s) and examine the contents of the packages, weight, measure and value of goods. In case Shipper's particulars are found to be erroneous and additional freight is payable by the Shipper, Consignee and goods shall be liable for all expense incurred for examining, weighing, measuring and valuing the goods. Full freight to destination shall be consider completely earned on shipment at Port of Origin, whether the freight be stated or intended to be prepaid or to be collected at destination. and the Carrier shall be entitled to all freight and charges due thereunder, whether actually paid or not. and to receive and retain them irrevocably under all circumstances whatsoever, vessel and/or goods lost or not lost or the voyage broken up or abandoned. All unpaid charges shall be paid in full and without any offset, counterclaim or deduction, in the currency of the United States, or at Carrier's option or equivalent in foreign currency. The said Carrier shall have a lien on the goods, which lien shall survive delivery, for all freight and charges due under this bill of lading and under any contract of participating Carriers, including dead freight and demurrage, and for the cost of recovering such freight and demurrage and may enforce this lien by public or private sale and without notice. The Shipper, Consignee and owner of the goods shall be jointly and severally liable to the Carrier for the payment of all freight and charges and the performance of the obligation of each of them hereunder.

21. Fire. Neither the Carrier nor its terminal operator or stevedore shall be liable to answer for or make good any loss or damage to goods occurring at any time and even though before loading on or after the discharge from the vessel, by reason or by means of fire whatsoever. unless such fire shall be caused by their design or neglect.

22. Government directions, war, epidemics, ice, strikes, etc.
(a) If owing to blockades, riots, emotes, civil commotion or piracy or the hostile act of any Power or person, quarantine, epidemics, unsafe navigation, surf, ice, bad weather, lockouts, boycott. strikes, stoppage of labor form any cause, any of which on board or on shore, congestion or difficulties in loading or discharging or absence of facilities for discharging and landing, shortage of labor or from any other cause the vessel is prevented from leaving the port of loading or reaching or entering her port of destination and leaving gain or from loading and/or discharging goods with customary dispatch or if the discharging of the goods or any part thereof should be objected to by the Authorities or if any person on board should be exposed to the risk of life or freedom or it in the opinion of the Carrier it is from any of the aforementioned causes or from anticipation thereof unsafe or not prudent for the vessel to remain at the loading port or proceed to her intended destination or after arrival to remain and discharge the goods or any part thereof and/or load again with customary dispatch, the Carrier shall in his absolute discretion, but without any liability for any loss, damage, injury or delay whether caused by or resulting from the negligence of the Carrier or otherwise have the option to discharge the goods at the loading port or proceed to and land the goods at the nearest port he may consider safe and convenient to bring the goods back to the port of shipment or wait on the vessel until the vessel can safely proceed to her port of destination, all of which at Merchant's entire risk and expense.
(b) Vessel shall not be obliged to force ice.
(c) In the event of imminence of war of existence of war, civil-war, revolution, hostilities or war-like operations between nations, cessation or prohibition of intercourse, commercial or otherwise, between any nation, sanctions imposed or measures taken by any Government or Authority in consequence of in connection with any of the above matters, control or direction by any Government or other Authority of the use of movements of the vessel of the insulated or other space in the vessel of the goods located or received for loading, the Carrier may in his absolute discretion at any time before or after the commencement of the voyage alter or vary or depart from the proposed or advertised or agreed or customary route and/or delay or detain the vessel or of any port or place without being liable for any loss or damage whatever directly or indirectly sustained by the Merchant. The carrier shall not be responsible for any consequence directly or indirectly resulting from any such cause. The Carrier shall be privileged in his absolute discretion to proceed to any other port or ports or return at or return to the port of shipment once or oftenn in any rotation, retain the goods on board or transshipping or discharging them at Merchant's risk or expense at any port or ports, place or places at the first or any subsequent call.
(d) In case of seizure of goods by any Government, Power or Body of any kind, whether legal or not, the Carrier shall be entitled but not obliged to enter into an agreement with such Authority or others who have seized the goods to the effect that the goods after reaching a subsequent port or the port of destination, shall at Merchant's risk and expense be returned to place of seizure or elsewhere or shall be stored at the port of destination. or elsewhere as ordered by or arranged with the said Authorities or others and Carrier to be relieved of all further liability in respect of the goods as so arranged with them without any restrictions. Thereafter the Merchant shall have no right to demand delivered of the goods from the Carrier and shall have no claim of any kind against the carrier on account of any loss, or damage, directly or indirectly, to the said goods or on account of anything done or not done by the carrier in compliance with any such agreement.
(e) The Carrier shall have liberty to comply with any order or direction or recommendations given by any Government or Authority or any Body acting on behalf of such Authority or Government or having under the terms of the insurance on the vessel to the right to give such orders or directions or recommendations.
(f) The discharge of any goods under the provisions of Clause 22 of the Bill of Lading shall be deemed due fulfillment of the contract in connection with the exercise of any liberty under Clause 22 any extra expenses are incurred, they shall be paid by the Merchant in addition to all freight including return freight if additional freight if any and other charges incurred and a reasonable compensation for any extra services rendered to the goods.
(g) The Carrier has liberty at any time to postpone or cancel the contract if any of the contingencies referred to in Clause 14 of the Bill of Lading may reasonably be anticipated to arise.

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLOBAL POLYCHEM, L.L.C. | § | |
| | § | |
| *vs.* | § | C.A. NO. H – 10 – 1289 |
| | § | |
| TRITON   OVERSEAS | § | |
| TRANSPORT,   INC. | § | |

### *INDEX   OF   MATTERS   BEING   FILED*

Under Local Rule 81(5), Defendant Triton Overseas Transport, Inc. attaches this index of matters being filed:

(1)   All executed process in the case under Local Rule 81(1).  (Exh. B)

(2)   Pleadings asserting causes of action (*i.e.*, Plaintiff's Original Petition) under Local Rule 81(2).  (Exh. C)

(3)   The docket sheet under Local Rule 81(4).  (Exh. D)

Respectfully submitted,

*SHARPE & OLIVER, L.L.P.*

By_____

    Robert C. Oliver
    State Bar No. 15255700
    S. D. Texas No. 886
    550 Westcott, Suite 230
    Houston, Texas 77007–5096
    Telephone:    (713) 864–2221
    Facsimile:    (713) 864–2228

OF COUNSEL:

R. M. Sharpe, Jr.
State Bar No. 18129000
S. D. Texas No. 889

                 ATTORNEYS   FOR   DEFENDANT

## *Certificate  of  Service*

    I served this Index of Matters Being Filed upon Plaintiff by its counsel of record by U.S. First Class Mail, return receipt requested, facsimile transmission and/or electronic transmission on April 21, 2010.

_____

Robert C. Oliver

2

# Exhibit B

ENTERED
C.C.D

CONFIRMED FILE DATE: 4/8/2010

| RECEIPT NUMBER | 6516 | 65.00 |
| TRACKING NUMBER | 72511231 | C01 |

CAUSE NUMBER ___ 201013985 _____ P-1

| PLAINTIFF: GLOBAL POLYCHEM | In The 152nd |
| vs. | Judicial District Court of |
| DEFENDANT: TRITON OVERSEAS TRANSPORT INC | Harris County, Texas |

## CITATION CORPORATE

**THE STATE OF TEXAS**
**County of Harris**

TO: TRITON OVERSEAS TRANSPORT INC BY SERVING ITS REGSITERED AGENT WILLIAM ONORATO

3340 A GREENS ROAD SUITE #410  HOUSTON TX 77032 (281-902-3801)

Attached is a copy of __PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE__.

This instrument was filed on the ___3rd___ day of ___March___, 20 _10_, in the above cited cause number and court. The instrument attached describes the claim against you.

**YOU HAVE BEEN SUED;** you may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of 20 days after you were served this citation and petition, a default judgment may be taken against you.

**TO OFFICER SERVING:**

**This Citation was issued under my hand** and seal of said Court, at Houston, Texas, this ___8th___ day of ___March___, 20 _10_.

Issued at request of:
GLOBAL POLYCHEM
10303 NORTHWEST FREEWAY SUITE
HOUSTON, TX 77092

Bar Number: 1

**LOREN JACKSON, District Clerk**
Harris County, Texas
201 Caroline, Houston, Texas 77002
P.O. Box 4651, Houston, Texas 77210

**Generated by:** DARRINGTON, NATRICE     19C/E9H/8646

## OFFICER/AUTHORIZED PERSON RETURN

I received this citation on the __22__ day of __March__, 20 _10_, at _2:40_ o'clock _P_.M., endorsed the date of delivery thereon, and executed it at _3340 A Greens Rd #410_, _Houston_.
      (street address)      (city)

in _Harris_ County, Texas on the __5__ day of __April__, 20 _10_, at _11:30_ o'clock _A_. M.,
by delivering to __TRITON OVERSEAS TRANSPORT INC__, by delivering to its
    (the defendant corporation named in citation)

__REGISTERED AGENT__, in person, whose name is __WILLIAM ONORATO__,
(registered agent, president, or vice-president)

a true copy of this citation, with a copy of the __PLAINTIFF'S ORIGINAL__ Petition attached,
    (description of petition, e.g., "Plaintiffs Original")

and with accompanying copies of __REQUEST FOR DISCLOSURE__
    (additional documents, if any, delivered with the petition)

I certify that the facts stated in this return are true by my signature below on the __5__ day of __April__, 20 _10_.

FEE: $ _65.⁰⁰_     By: _Harri C. Marsh_
           (signature of officer) DEPUTY R.A. MARSH C620

Printed Name: _____

         As Deputy for: _____
_____         (printed name & title of officer)
Affiant Other Than Officer

CONSTABLE RON HICKMAN
Pct. #4 Harris County
6831 Cypresswood Drive
Spring, Texas 77379

On this day, _____, known to me to be the person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, 20 ____.

_____
Notary Public

N.INT.CITC.P

Certified Document Number: 45006994 · Page 1 of 1



I, Loren Jackson, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date
Witness my official hand and seal of office
this _____ April 21, 2010 _____

Certified Document Number: ___45006994_(Total Pages 1)

LOREN JACKSON, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Exhibit C

CONFIRMED FILE DATE : 3/3/2010

P4



**2010  13985**

Cause No. _____

| | | |
|---|---|---|
| **GLOBAL POLYCHEM, L.L.C.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **VS.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **TRITON OVERSEAS** | § | |
| **TRANSPORT INC.** | § | **___ JUDICIAL DISTRICT** |

FILED
Loren Jackson
District Clerk
MAR 03 2010
Harris County, Texas
Time: _____
By _____ Deputy

## PLAINTIFF'S ORIGINAL PETITION & REQUEST FOR DISCLOSURES

## TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, Plaintiff, Global Polychem and files the instant Original Petition and Request for Disclosures against Defendant, Triton Overseas Transport, Inc:

### I.

### DISCOVERY CONTROL PLAN

1.     Plaintiff intends this case be conducted in accordance with a Level 2 discovery control Plan pursuant to Rule 190.3 of Texas Rules of Civil Procedure because the amount in controversy exceeds $50,000.

### II.

### PARTIES

2.     *Plaintiff, Global Polychem, is a limited liability corporation licensed to conduct business in the state of Texas. Defendant, Triton Overseas Transport, maintains a business a place of business at 3340 Greens Rd. bldg A Suite 410 Houston (Harris County) Texas 77032 and may be served with process by serving its registered agent William Onorato at 3340 Greens Road Suite # 410 Houston TX 77032.*

Certified Document Number: 44694190 - Page 1 of 4

## III.

## VENUE & JURISDICTION

3.   Venue for this contract suit is proper in this county under a permissive venue
     provision because this is a suit for breach of a written contract that identified the
     place of performance as 10303 N.W. Freeways, #514 Houston, Texas 77092.
     Based on that contract, venue is proper in this county because the parties executed
     a written contract that provided it was to be performed here.

## IV.

## FACTS

4.   Triton Overseas Transport is a logistic company which takes care of the logistics
     of Global Polychem for overseas shipments. As per an agreement between the
     two, Triton Overseas Transport booked a 40' HQ container through Safmarine
     sea shipping line for Global Polychem (Booking # 529052709). Triton Overseas
     Transport, being a freight forwarding agent, was supposed to follow Global
     Polychem's instructions for every shipment. For this particular booking Global
     Polychem gave the written instruction not to release the cargo to the consignee.
     Triton Overseas Transport was to wait for further instruction because the
     consignee had not made payment on a particular invoice. Triton Overseas
     Transport confirmed the acceptance of these instructions. However, Triton
     Overseas Transport released the container to the consignee without Global
     Polychem's permission or knowledge resulting in the consignee receiving goods
     without paying. Accordingly, Global Polychem has suffered damages and this
     forms the basis for the underlying lawsuit.

Certified Document Number: 44694190 - Page 2 of 4

## V.

## <u>COUNT 1 BREACH OF CONTRACT</u>

5.  Triton Overseas Transport breached their agreement with Global Polychem and caused Global Polychem to sustain damages because Triton Overseas Transport had no right to release cargo without permission of Global Polychem.

## X.

## <u>CONDITIONS PRECEDENT</u>

6.  All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## XI.

## <u>REQUEST FOR DISCLOSURE</u>

7.  Under Texas Rule of Civil Procedure 194, Global Polychem requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## XII.

## <u>PRAYER</u>

For these reasons, Global Polychem asks that Defendant be cited to appear and answer and that Global Polychem have judgment against Defendant for the following:

a.  Actual damages.

b.  Prejudgment and post judgment interest.

c.  Costs of suit.

Certified Document Number: 44694190 - Page 3 of 4

d. And all other relief, in law and in equity, to which Global Polychem may be entitled.

Respectfully submitted,

Sanjeev Jaiswal
10303 Northwest Freeway
Suite #514
Houston, Texas 77092
832 788 3952
713 686 2007 fax

**PRO SE PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this instrument has been served upon all parties of record by Certified Mail-Return Receipt Requested on _____, 2010, pursuant to the requirements of Rule 21a TEX. R. CIV. P.

William Onorato
3340 Greens Road Suite # 410
Houston TX 77032

Sanjeev Jaiswal

Page 4



I, Loren Jackson, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date
Witness my official hand and seal of office
this _____ April 21, 2010 _____

Certified Document Number: ___ 44694190 (Total Pages 4)

LOREN JACKSON, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

# Exhibit D

## Harris County Docket Sheet

# 2010-13985

**COURT:** 152nd
**FILED DATE:** 3/3/2010
**CASE TYPE:** BREACH OF CONTRACT



### GLOBAL POLYCHEM

vs.

### TRITON OVERSEAS TRANSPORT INC

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |